Feeeman, J.,
delivered the opinion of the Court.
The bills in these cases * allege, among other things, that on the 24th of November, 1866, the Legislature of Tennessee amended the charter of the city of Memphis, providing that the Board of Mayor and Aldermen shall have power to require the costs of paving the entire carriage-way, gutters included, of any street, or any portion of any street, or alley, to be borne by the owners of the adjoining property; and in such manner, and with such materials, as the Board of Mayor and Aldermen may determine;—and whenever the Board of Mayor and Aldermen may deem it necessary, the}’’ shall require snch grading and paving to be done in such manner as they may prescribe by ordinance: and the cost of such grading, paving, repairing and repaving, shall be apportioned and charged on the adjoining lots in proportion to their respective fronts, and shall be paid by the owners of such lots respectively.
This work was to be done, under the control of the city engineer, by direction of the Board, and be let out to the best responsible bidders, under such restrictions and regulations as should be prescribed by city ordinance. The mode of assessment, as provided for by the act is, “ that ás soon as any contract for *353 grading, paving or repairing any street or alley, or portion thereof, shall have .been made, the Board of Aldermen shall proceed to levy and assess upon each lot, bounding or abutting the said street or alley proposed to be improved,' such a proportionable sum, as-shall make up the entire cost and expenses of said improvement opposite the same, to the centre of the-street, and shall fix the time’ within which the same-shall be paid; and the number of instalments, with the amount to be paid at each of said ih.-ud-i-'-i-ts.. Thereupon the city engineer shall make out and deliver to the city attorney, for collection, the accounts, for such apportioned cost of the improvement; and the owners of the lots charged therewith, shall be bound to pay said costs like liabilities contracted by themselves, and may be sued therefor; but the property shall also be held for the respective apportioned share of such cost, until the same, with interest, and cost of collection, be fully paid off — and a special lien on such lots is given for such apportioned charge and costs. To enforce this lien, these bills are brought,, and for collection of assessments thus made, the accounts having been made out and delivered as required, and payment refused.
Without going at present into any detail as.to the terms of the contracts, or into minoi questions raised in argument, we enter upon the discussion of the question, whether this law is valid under the Constitution of the State of Tennessee, or not? It is proper to add, that the cost of the work done is estimated at *354 about one million and a half dollars, ($1,500,000), and is by this law and under the city ordinance imposed on the holders of property on nine streets and, perhaps, an avenue, known as Charleston Avenue.
The discussion of this question involves the consideration of the nature and extent of the taxing power in this State, with its limitations, as found in our Constitution, and the objects and purposes to which the exercise of that power may rightfully be applied. In addition to this, it involves the question as to whether there is a power in the State government, and which may be delegated to counties or incorporated towns, to impose a burden of the character here presented, in the form of a local assessment, which is not subject to the restrictions or regulations of. our Constitution, but independent of them, and subject only to the discretion of the law-making power — with only such checks upon its exercise as are imposed by the influence of the constituent upon the representative — and then the question, as to whether the exercise of this power can be justified under what is known as “the police power,” to be carried out and effectuated by the taxing power, or in connection with the taxing power.
The learned counsel who has so ably and earnestly maintained the constitutionality of this law, has added however, by way of concession, that the power to burden the citizen . by way of local assessment, is however subject to one limitation, that is, of apportionment, and that the Legislature could not arbitrarily impose such assessments on any one individual or class nf individuals, as such, but that the burdens must be *355 apportioned according to some rule, but insists that the apportionment found in the act of 1866, is based on the proper principle, and within the rule, as he conceives its limitations.
The power to impose and collect taxes is one growing of necessity out of the very idea of a governmental organization; and with great distinctness it springs, by such necessity, from a government organized on the principles of all our American governments, whether Federal or State, having their organizations in written constitutions, in which the powers of those governments are defined, and duties thereby imposed; and for the exercise of those powers and performance of those duties, the agencies created by these constitutions are distributed among several departments, to-wit: Legislative, Judicial aud Executive. These departments being assisted by another large class of what may be called subordinate official agencies, that may be properly denominated ministerial offices. In the exercise of these powers, and the performance •of the duties imposed by the constitution upon its government thus distributed, large burdens are necessarily incurred, for payment of salaries and the othei expenses incident to the administration of proper governmental control over the great interests confided to such agencies, which must be met and paid by the people whose government it is, and who have organized and set in motion this machinery by virtue of their sovereign will, in convention assembled, as is our Republican custom. This is done by the exercise, through the Legislature, or law-making power — as the *356 body representing the people, who have organized the government — of what is known as the power of Taxation. It may be conceded, that this power thus, exercised, is without limitation, except by such as. necessarily inheres in the very idea of' taxation, as a means of serving the purposes for which it exists, and by the nature of the ends, for the attainment of which it arises — as a necessity — one of which as applied to the State, that it should be, to serve some one of the great purposes for Avhich that State was organized — to carry out some one of the powers which are conferred on that government — or to meet some one of the great public duties imposed on some one of the departments of that government, either expressly, or by fair implication.
The general features of taxation, or of a public burden that may be imposed as such, are thus laid down by Judge Cooley in the case of “The People v. Township Board, reported in 9 Am. Law Reg., 488 :
1. “ It must be imposed for a public; and not for a mere private purpose. Taxation is a mode of raising revenue for public purposes only; and, as said in some of the cases, where it is prostituted to objects in no way connected with the public interest or welfare, it ceases to be taxation and becomes plunder.
2. "The tax must be laid according to some rule of apportionment — not arbitrarily or. by caprice, but so that the burden may be made to fall with something like impartiality upon the persons or property upon which it justly and equitably should rest. A State burden is not to be imposed upon any territory *357 smaller than the whole State, nor a county burden upon a territory smaller or greater than the county. Equality is of the very essence of the power itself, and though absolute equality and absolute justice are never •attainable, some rule tending to that end is indispensable.
3. As a corollary from the preceding, if the tax is imposed upon one of the municipal sub-divisions of the State only, the purpose must not’ only be a public purpose, as regards the people of that sub-division, but it must also be local; that is to say, the people of that municipality must have ,a special and peculiar interest in the object to be accomplished, which will 'make it just, proper, and equitable, that they should bear the burden rather than the State at large, or any more considerable portion of the State.”
He then says: “ The three principles here stated are fundamental maxims in the law of taxation. They ‘inhere as conditions in the power to impose any taxes whatsoever, or to create any burdens for which taxation is to provide; and it is only when they are observed, that the legislative department is exercising an authority over this subject, which it has received from the people, and only then is that supreme legislative •discretion, of which the authorities speak, called into action.”
With the fundamental principles which we have premised, and the three quoted from Judge Cooley, which we deem sound, and perhaps as strictly accurate as we shall be able to make them, we proceed to the investigation more directly of the questions presented.
We will first notice a few of the’ cases urged upon *358 our consideration by the counsel for complainant. We can not take them up one by one for wan't of time, nor, indeed, would it be profitable to do so, as they nil, in the main, are based on the same line of reasoning, and founded upon the same general considerations and principles, so that a review of a few of the leading cases will necessarily include the’ principles-of the other cases cited. It is proper here to notice, however, that the principle so often quoted, as, laid down by Chief Justice Marshall, in case of Providence Bank v. Billings, 4 Peters, 563, (Curtis’ Ed.,)“That the power of legislation, and consequently of taxation, operates on all persons and property belonging to the body politic. This is an original principle, which has its foundation in society itself'. That however absolute the right of the individual may be, it is still in the nature of that right that it must bear a portion of the public burdens, and that portion-must be determined by the legislature; or, as he has. expressed in case of McCulloch v. State of Maryland, 4 Wh., 434, “the power of taxing the people and* their property, is essential to the very existence of government, and may be legitimately exercised on the-objects to which it is applicable, to the utmost to. which the government may choose to carry it. The only security against the abuse of this power is found' in the structure of the government itself. In imposing a tax, the Legislature abts upon its constituents.. This is, in general, a sufficient security against oppressive taxation.” These principles, when properly-applied, or fairly understood, do not, by any means,. *359 militate against the ideas of limitation inherent in the exercise of the power of taxation which we have laid, down, and those quoted above from the opinion of Judge Cooley in the case of The People v. Township Board. On the contrary, these limitations may fairly be deduced from the very principles as thus laid; down; for in the one case he expressly applies this-(so-called) unlimited power, as applied to the citizen and his property, “ to bearing his portion of the public burdens, which must be determined by the Legis-ture.” What the portion shall be is to be determined by the Legislature, restrained only by the Constitution, but still it must be imposed for a public burden; and in the other case he says this power-may be legitimately exercised on the objects to which it is applicable, to the utmost extent to which the government may choose to carry it. The objects to-which it is applicable must, as we think, be the carrying out the powers of government, as defined in the-Constitution, or in performance of duties therein imposed, and must necessarily be restrained and governed by whatever regulation the people have imposed in their constitution when sought to be exercised by the-Legislature, and of these restraints and limitations the judiciary are to • judge, as the tribunal organized for-the purpose, and charged with the duty of bringing the action of the law-making power to the test of constitutional limitation, and declaring its action void when it goes beyond its legitimate powers.”
Passing from this we proceed: The ease of “The People v. Mayor of Brooklyn, 4 Comst., 420, is the *360 leading case on the general question of ‘local assessments,’ in which they were sustained in an opinion of great ability by Judge Buggies. That case was this, The Common Council of Brooklyn, in -1848, caused Flushing Avenue, one of the streets of the city, to be graded and paved at an expense of upward of $20,000, which, according to a provision in the charter, was assessed upon the owners or occupants of lands benefited by the improvement, in proportion to the- amount of such benefit. This assessment was sought to be annulled by an appeal to the courts. In the opinion in the case, the validity of the assessment, it was said, could only be sustained either as an exercise of the right of eminent domain, or as a legitimate mode of taxation. The two modes of imposing public burdens were well distinguished, the one from the other, by the learned judge, when he says, ]). 424, ‘ taxation exacts money ' or services from individuals, as for their respective shares of contribution to any public burthen.’ Private property taken for public use by the right of eminent domain, is taken not as the owner’s share of contribution to a public bur-then, but so much beyond his share. Special compensation is therefore to be made in the latter case, because the government is a debtor for the property -so taken; but not in the former, because the payment of taxes is a duty, and creates no obligation to repay, otherwise than in the proper application of the tax. Taxation operates v/pon a community, or upon a class of persons in a community, only by some rule of apportionment.”
*361 We need but say that these propositions serve well to distinguish between the two things or powers of government intended to be distinguised, but we can not agree that in any proper or accurate sense, .especially under our State Constitution, that the exaction of services from an individual can be properly included under the power of taxation. Upon what sound principle could the requirements of our Constitution of 1834, Art. II., Sec. 27, “that all property shall be taxed according to its value, that value to be ascertained in such manner as the Legislature shall direct, so that the same shall be equal and uniform throughout the State,” be held applicable to such an exaction, we are at a loss to see; yet this is the rule given for taxation in that instrument. We need not further notice this, however, at this point. The learned judge then lays down a correct principle, as far as it goes, “That the power of taxation, and apportionment of taxation, or of assigning to each individual his share of the burthen, is vested exclusively in the Legislature, unless this power is limited or restrained by some constitutional provision. The powér of taxing, and the power of apportioning taxation, are identical and inseparable. Taxes can not be laid without apportionment, and the power of apportionment is, therefore, unlimited, unless it be restrained, as a part of the power of taxation.” If we add to this the inherent limitations necessarily implied in the nature of the power, and which may be held as fairly implied restrictions, equally found in the Constitution by fair exposition of its language, then, perhaps, no ob *362 jection can be made to this statement of the principle. He then goes on to show that since the organization of the Government of the State of New York; no such restrictions upon this power, as he has. defined it, existed as a constitutional limitation. He then, after reasoning on general principles to show the equity of the apportionment, puts the validity of the tax, as correctly given in the syllabus of the ease,, upon the ground of want of constitutional regulation or restriction, requiring a different mode of assessment, that is, nothing requiring “that taxation shall be equal, as in case of capitation tax, or that it shall be in proportion to the value of the property of the person taxed, or that it shall not be apportioned according to the benefit which each taxpayer is supposed to receive from the object on which the tax is expended.” He finds such a tax recognized (that is, an assessment as distinguished from a general tax) by Art. IX. of the Constitution of the State, imposing the duty of restraining the power of municipal corporations in making assessments, and preventing abuses therein. Such assessments seem to have, before the adoption of their Constitution, grown up as part of the customary law of the State, and being thus regulated by the Constitution, were clearly recognized and perpetuated by it. We need but say that having, as we hold, no customary law in our State that would go to the extent of sustaining such a tax or assessment as the one in question in that case, nor any constitutional recognition of the principle in terms, the case of People v. Mayor of Brooklyn, can have no controling influence *363 over our decision in this case. In addition, toe have repudiated the principle of compensation in the way of benefit in ease of taking private property for public use? in the case in 2 Swan, Woodfolk v. Nashville & C.R.R. Co., and then in our Constitution, expressly regulated taxation, not upon this principle, but upon the principle of equality and uniformity, and according to the value of the property taxed.
The case of Emery v. San Francisco Gas Co., 28 Cal., has been strongly pressed upon our attention as sustaining the views of counsel in support of the validity of this tax. We have examined that case, and find it an exceedingly able discussion of the question. That case, however, can not be made to support the views of counsel, for one reason, if no more, that is, that it goes on the principle of a distinction between “local assessments” and “taxation for raising revenue for the ordinary purposes of government,” as sustained by the language of the Constitution of that State, and while the court recognized the application of the principle of their Constitution, Art. XI., that “taxation shall be equal and uniform throughout the State,” and “ all property shall be taxed in proportion to its-value, to be ascertained as directed by law,” as eon-troling the assessment of taxes for the general purposes of government. Yet there is another provision of their Constitution, See. 37 of Art. IV., which is almost a literal copy of the Constitution of the State of New York, and is as follows: “ It shall be the duty of the Legislature to provide for the organization of cities and incorporated villages, and to restrict *364 their power of taxation, assessments, borrowing money, etc., so as to prevent abuses in assessments, and in contracting debts by such municipal corporations. The court say, in reference to this last clause: Taxation and assessments are here spoken of and recognized as legitimate modes of exercising power. The framers of the Constitution could not have intended to convey the same specific idea' by these two terms, if so, they are guilty of unmeaning tautology, and might just as well have said “taxation and taxation.” They must' have meant something by the word assessments, specifically different from taxation as that term was understood by them.” The court then goes on to show that the section was a copy from the Constitution of New York, and had a well defined meaning, contradistinguished from that of taxation' for the general purposes of government, and that the rule of the constitution regulating general taxation was not intended to apply to these local assessments. The court, however, go on to express the opinion, or rather cite, with evident approval, from the opinion of Chief Justice Ramsey, in Higdon v. Higdon, the proposition, that if the general clause of the Constitution requiring a uniform rate to be levied on all property, had been applicable, and the Constitution had nothing further on the subject, that any other mode of levying taxes for any purpose was necessarily excluded. This case, as well as. most of . the. cases in the Northern and Western States, being based on this distinctive feature of their respective State Constitutions, and all *365 the cases, we believe, either based on this or on the same distinction by adopting the idea that there was two forms of taxation, the one of local assessments, the other for general purposes. Whether the provision alluded to was in their Constitution or not can not control the case before us, unless we shall adopt that distinction as the correct one. We will not cite these cases further at present for the purpose of criticism.
We proceed to examine the proposition thus maintained, and the one most relied on by counsel for complainant. He insists that taxation applies, as in the cases cited, and many others not cited, alone to revenues to be collected from the people for general and ordinary purposes of government, and this form of taxation is subject to the restrictions contained in Sec. 28, Art. II. of our Constitution; but that, on the contrary, taxation in the form of local assessment, is not thus regulated and restricted, and is equally lawful and constitutional, or within the province of the Legislature to authorize. This last mode of taxation, he concedes, is subject to some necessary limitations, one of which is, it must be apportioned. If, however, the Constitution does, not regulate this mode of taxation, either by express limitation or by fair implication, from its general provisions, it is difficult to see where a State Legislature would find the limitations that would operate as a restraint upon a body which, it is maintained, is as omnipotent as the British Parliament in all matters legitimately legislative, that is, in all matters involving law making, and the regulation of the future conduct and rights.of the citizen
*366 However, we proceed to examine the question thus presented. We assume as sound the principle laid down by Chief Justice Ramsey in the case cited above, which is substantially that the Constitution intended to provide, in Art. II., Sec. 28, for regulation and limitation upon the powers of the goverment of the State in the collection of taxes from the people, and that this mode thus provided being sufficient for all the purposes of government, that if the Constitution contains nothing more on the subject, “any other mode of levying taxes for any purpose was necessarily excluded ” — the clear expression of one thing excluding another. As to taxation for State purposes, we take it that it’ will be conceded that all taxation, fastened upon the people by the Legislature, must, of necessity, be governed by this clause of our Constitution. "We ask why such must be the rule? The answer must be, that it can not be presumed that the Convention, in fixing these regulations and limitations upon the taxing power, intended only to regulate one-half of it, so to speak, and leave another portion, that might be rendered equally burdensome upon the people, without restriction or limitation, to be exercised at the will of the Legislature. They have provided regulations, and fixed the limitations upon the mode of exercising the taxing power, and it must be that unless they had expressed otherwise, the whole subject is included. They have said. “all property shall he taxed according to its value.” This excludes the power of taxing on any other principle, for State purposes. But on the theory of the argument in favor of the prop *367 osition sustaining this tax now under discussion, why-may not the principle of- local assessment be applied to raising revenue for many of the burdens that now rest on the State? Much of the debt of the State was incurred for aid to the several railroads and turnpikes of the State. Why not adopt the mode of local assessment on the people of the counties through which these roads run, and apportion’ the burden on the people most benefitted? If the Constitution only regulates taxation when applied to raising revenue for the general purposes of government, why may not the limitations upon the exercise of the taxing power be avoided at any time? for all the class of cases referred to (and perhaps others), that may well be denominated local improvements by simply changing the mode of laying the burthen on the people, and calling it by the name of “ local, assessment,” and then we have but to apply the one -mode to one class, and the constitutional mode to the other class, to find the Government raising revenue from the:- people in the one- ease in a mode subject to no limitation whatever, and in the other regulated by the Constitution, and that for precisely the same character . of purposes. In -other words, that the power of. taxation is only subject to the Constitution when the Legislature choose that it shall be.
But without pressing this view further, as it is conceded that all taxation for the general purposes of government is subject to the restrictions and regulations in Art. II., Sec. 28, we proceed to the .next clause of our Constitution. It provides that “the *368 General Assembly shall have power to authorize the several comities and incorporated towns in this State to impose taxes for county and corporation purposes respectively, in such manner as shall be prescribed by law; and all property shall be taxed according to its value, and upon the principles established in_ regard to State taxation
Here, then, is the authority on which the Legislature can authorize a county or municipal corporation to impose taxes for county and corporation purposes. Why are not' counties and incorporated towns as much bound to impose all taxes for all the general purposes of their government, and certainly for each one of their defined purposes and powers, as given and prescribed in their charters of incorporation, on the same principle that regulates the collection of revenue by taxation for the general purposes, or the constitutionally defined purposes of the State Government? If the State Government is bound by the limitations of Sec. 28 in its mode of collecting revenue for the general purposes and duties imposed on that government, it would seem equally clear that the municipal government of each town was equally bound by the restrictions imposed in Sec. 29 of same article, and that for these purposes it could only impose taxes; and in imposing such taxes, “ all property shall be taxed according to its value, and upon the principle established in regard to State taxationIn other words, there being but one kind of taxation authorized by the Constitution for the raising of revenue for the general purposes of the State Government, and that *369 regulated by Art. II., Seo. 28, that there was but one mode or kind of taxation for corporation and municipal purposes, and that regulated by Sec. 29 of that Article, and to be laid on property upon the same “principles established in ' regard .to State taxation.” Can it be conceived that the Convention intended to provide that the incorporated: towns of the-State, in raising the money that should pay the salary of a Mayor, or of a Tax Collector, a sum amounting at most to a few thousand dollars, required they should do it by taxation, and that in levying such taxes all property should be taxed according to its value, ’ upon the principles established in regard to .State taxation, yet left these bodies free to adopt the principle of “ local assessment,” and impose a burden of a million and half dollars ($1,500,000) on a comparatively small body of owners of .property on their leading streets? This would be to regulate and restrict a minor matter,' and leave a fat greater and more-tremendous power .of the same kind, with no limitation whatever upon it.
It is argued that the influence of the constituent on the representative, either in the Legislature, or in the legislative body of the corporation, is the check upon a wrong exercise of this power, and a sure preventive of oppression. But when we look at this for a moment, must we not see that, practically, this amounts to nothing, as the influence of a small body of property holders, on a few streets in a city of the size of Memphis, would be powerless against the large mass of voters owning no such property, and *370 who would reap the benefits of. such improvements-as the Nicholson' pavement, and yet contribute nothing toward its construction, but could, by their votes, Compel these few owners, even though it should take the property itself, to bear the burden of such a great public work. The fact that such check as is referred to is powerless, is a strong reason in favor of the proposition that the limitations of the constitution were interposed as a barrier, unchanging against such wrongs.
Another view of this question; "Whatever powers may be conferred by the Legislature- on incorporated towns, as to imposition of taxes, may equally be conferred on counties; and we can see no reason why, upon the same principle contended for in support of this assessment, the same exception in favor of the power to make “ local assessments,” independent of these clauses of the Constitution, may not equally exist in favor of counties. Why may not the counties of this State, under the direction of its County Surveyor, lay off and construct its roads as expensively as the Nicholson pavement, or lay down the pavement itself along them, and then assess the owners of lands abutting these roads in proportion to their frontage, for payment of this assessment? This, it is true, would probably absorb most of the adjoining lands, or much of them; but, according to much of the argument, this could make no difference; the power to take all is equally clear, as the simple power to take a small per centaga on value for' public burdens, provided it is only taken by some rule of apportionment. From these consequences of the doctrine, the *371 learned counsel somewhat recoiled, but. yet we are- at a loss to' see bow they are to be avoided as legitimate conclusions from the premises assumed.
Again, it has been held, in case of Nichol et als v. Mayor and Aldermen of Nashville, 9 Hum., 268, that the of building a railroad — the Nashville & Chattanooga Road — to the city of Nashville,.-was a corporation purpose, and so embraced in this article and section of the Constitution, and the Legislature was authorized to empower the city to subscribe for twenty thoiisand shares of stock in said company. On the theory of the argument here, why might not the corporation have been authorized to make “a local assessment,” to raise this amount, on the property holders abutting on the leading streets of the city, or on the owners of property adjoining to the depot grounds, and apportion the burden among th’em?
If this kind of taxation has no limit upon it except the implied one of apportionment, no constitutional regulation reaching it, it is not perceived why this course might not have been pursued. It surely was not a tax for the general pnrposes of a municipal corporation, either general or local; yet we venture to say that it would hardly be contended that the railroad subscriptions of any city or town can be imposed upon any portion of its citizens in any form of assessment, or collected from them in any way, except as regulated in the Constitution of the State, Art. II., Secs. 28 and 29.
The history of the introduction of this 29th' section into our Constitution will serve to strengthen.' the *372 view we have taken, that is, that the entire taxing power was intended to be regulated. It had been, held; in Marr v. Enloe, 1 Yer., 452, that this power,, being in its nature legislative, and an attribute of sovereignty, could not be delegated; that it could no-more be done than could the power to enact laws be delegated. This' decision was made on the act of 1827, ch. 49, which enacted “that the Court of Pleas and Quarterly Sessions in the several counties of this State, a majority of twenty of the acting Justices-being present, shall, at the first court in each year, levy a tax to meet the current expenses of their county for the ensuing year upon all polls and property subject to taxation.” This act was held "to be void. The Convention in 1834, to meet this decision, made in 1830, inserted in the Constitution the 29th section, and authorized a delegation of this sovereign power to counties and incorporated towns, for corporation and county purposes, but imposed the same restrictions and limitations upon the exercise of the power that were imposed on the Legislature in laying taxes for State purposes. And in this we have no question they intended to fasten these limitations of equality and taxation according to value on the counties and incorporated towns in precisely the same way, and to the same extent, as it had done on the Legislature as tp State purposes, that is, upon the entire power, and not upon it in one form, leaving another untouched and unrestrained.
Again, it was proper that this exercise of sovereignty should be regulated alone by the Constitution, *373 the supreme law of the land, and in consonance with 'the general spirit of our governments, both Federal •and State.
The whole argument, so far as it. rests on principle, in favor of this tax as a local assessment, rests on the ground, that there is no distinction in our State, between taxation by assessment, for local purposes — and .,general taxation, for the ordinary purposes of government —and that this distinction consists in the purpose or objects for which the tax is laid, and not in the manner of apportioning the tax among' the taxpayers. The answer to this is found in the opinion of the Supreme Court of Illinois, in the case of The City of Chicago v. Larned, 34 Ill., 203: “That, if this assessment is to be regarded as an exercise of the taxing power, then it is a flagrant violation of the provisions of our Constitution.” The Court illustrates this as follows: “A and B may own respectively, two lots lying side by side. The natural surface of A’s lot may be twenty or more feet above the established grade, and composed of rocks unfit for building purposes. The natural surface of B’s lot may be at grade. An order is passed by the Common Council to open •and grade the street projected in front of these lots. It will cost B nothing, or a mere trifle — it will cost A all his lot is worth after the street is. opened. To what, does this amount to, but a confiscation* of A’s lot for B’s benefit, and that of others situated like him?” “Is it not,” say the Court, “absurd to call this equal and uniform taxation?” And we add, can *374 it be claimed, that a system of taxation, call it by any name you please, which takes, or may take, all the property of the citizen, as his share of the common burden, or for a public use, is taxation at all, in any proper sense of that word? It is a gross misapplication of terms so to designate it, and especially under our Constituton, that requires all property to be taxed according to value. If this be the taxation required by the Constitution, the assessment in this case is not taxation, unless diverse and opposite-things are and can be the same.
We need but refer to the above opinion, in a State-which has a Constitution embodying the precise rule as is found in our own, on this question, for a clear and sound statement of the true principles on this, subject. We but say, that no change of name can change the essential features of the thing, por can it escape constitutional regulation by a mere play on words,. or by giving it a different designation. See, also, Lexington v. McQuillon’s Heirs, 9 Dana, 513; Hammett v. Philadelphia, 3 Am. R., 619.
Then, as taxation for legitimate purposes is regulated by the Constitution, in sec. 29 of art. 2, we-need but inquire, whether this be a legitimate corporation purpose. The counsel for plaintiff concedes that the corporation might have well paid for this improvement, by imposing a general tax on the property of the inhabitants of the' city, or its property-holders. If so, then it- was and is a legitimate corporation purpose, and when such a purpose or duty is to be carried out, or performed, by such a- body, the legitimate- *375 mode of imposing the burden is by a tax, laid as prescribed by the Constitution. The case is certainly covered by the provisions of art. 2, sec. 29, and we would be slow, in view of the magnitude of the burden, to exclude it from the control of the supreme law of the land, and leave it to the wide and unrestrained field of unlimited discretion. In fact it is conceded, that such an improvement as the one under consideration, is a legitimate corporation purpose, and a tax in the usual form might well have been levied under the general powers of the corporation, or been authorized to be levied by the Legislature under the 29th clause, art. 2, of the Constitution. Taking this as conceded, the whole ground, we think, is yielded; for all such taxes as may be levied for corporation purposes, must be laid in accordance with the requirements of the two sections of the Constitution that profess to regulate the exercise of. this power of taxation — which as taxation, is only recognized in the form mentioned in that instrument.
In conclusion of this branch of the discussion, we lay down the proposition, that taxation, in the sense of the constitutional provisions, and in the form therein prescribed, being the legitimate and appropriate mode of providing revenue to discharge the general charges upon the State, and upon counties and corporations, that the implication is fair, and we think irresitible, that this means is imperatively demanded to be used, and imposed upon the government by the spirit and meaning of the Constitution, and must be resorted to, in all cases falling fairly within the range of what *376 can be denominated burdens for State, county or corporation purposes, unless some other mode of meeting these burdens is provided in the Constitution, or fairly recognized by it. This, as a general principle, we take to be a sound and safe rule, and the one that more nearly than any 'other comports with the idea of a constitutional government, with limitations and restraints imposed by the people by organic law, upon the action of their governmental agencies, of each and every kind, and in all departments of its machinery.
But it is earnestly insisted, that two decisions of the Supreme Court of our State have already settled this question in favor of complainants. We proceed now to an examination of these decisions. The first case is Mayor and Aldermen v. Mayberry, 6 Hum., 371. That was a question of the validity of an ordinance of the town of Franklin, authorizing the Mayor and Aldermen to cause footpavements and sidewalks to be constructed in the streets of the town, and on the public square, by the owners of the lots adjoining the same; and if the owners failed to do so, within the time prescribed, the Mayor and Aldermen were to do the work, or have it done by contract, and pay for it — the amount so paid to constitute a charge against the owners of the lots, to be recovered by suit in the name and for the use" of the corporation, before the Corporation Court, or before a Circuit Court, or Justice of the Peace. Mayberry having failed to construct a pavement in front of his lot, the corporation had it done, at the expense of seventy-five dollars, and sued him for this sum. The Court sustained the *377 validity of the ordinance, and held that Mayberry was liable to pay the sum demanded. In that case it was contended, that this was in the nature of a tax levied on the owner of the lot, and as such, was unconstitutional, because ' unequal. Judge Green, in that opinion, held that this was not a tax, but “in the. nature of a nuisance to he removed ,” and therefore within what is known in our books, though not so denominated by him, as “the police power.” He there defines a tax to be, “ a sum which is required to be paid by the citizen annually for revenue for public purposes.” “This ordinance,” he says, “levies no sum of money to be paid by the citizens. It requires a duty to be performed for the well-being and comfort of the citizens of the town. It is in the nature of a nuisance to be removed.” If the proposition is true, that it was not a tax — and upon this ground the learned Judge puts the decision, and this alone — but “in the nature of a nuisanee to he removed then his decision was clearly correct. If the question was an original question, we should not be disposed to agree with the proposition thus laid down. We think it was straining the principle very far, to hold, that an improvemet, such as a sidewallc, can be included under the idea of “a nuisance to he removed.” It is certainly more in the nature of an erection of a needed improvement for the comfort and convenience of the citizens of the town, than the removal of that which is noxious and hurtful to the citizens of the town. We do not feel inclined, however, to disturb that decision, when con *378 fined to the precise state o£ facts to wbicb it was applied in that case.
■The other case is Washington v. Mayor and Aldermen of the City of Nashville, 1 Swan, 177. This is a case of like character with the case of Mayberry, where the corporation sought to recover the cost of constructing a pavement in front of plaintiff’s lot. The opinion sustaining the action, is based on 'the same ground as in the former case. The Court, the same learned Judge delivering the opinion, say, that “to require the owners of town lots to construct pavements along their sidewalks, is not the exercise of the taxing power,, nor is it taxing private property for public use. Upon these two subjects, there are express provisions of the Constitution restraining the exercise of legislative discretion.” We may say, in reference to this' case, as the other, that putting the case, as was done by the learned Judge, outside the taxing power, the decision might well be sustained; but in the case now before us, the learned counsel has conceded that this is an exercise of the taxing power, but in the form of “assessment for local purposes,” and by this concession, under the principle stated by Judge Green, fairly brings it under the constitutional regulation. Judge Green saw clearly, that the imposition must be put outside of the taxing power, or else it could not be maintained. While we do not disturb these decisions, we hold, that they are to be limited strictly to the precise facts on which they are made, and that to ca»ry them so far beyond these facts, as to cover and include an exaction, or burden of the magnitude involved in the case now *379 under discussion, would be, not only to. do violence to their letter, but we have no doubt would be to carry them much farther than the learned Court ever conceived they would be attempted to be carried or applied. We, however, think a clear and broad distinction may be found between the imposition of such a duty as is recognized, in these cases by Judge Green, and the construction of a great public work, which, as stated by counsel in argument, is the pride and boast of a great and flourishing city, and which adds, perhaps, millions to its commerce annually, costing the magnificent sum, as far as already completed, of a million and a half dollars, ($1,500,000)' — and which, when extended to all the leading thoroughfares, may be fairly calculated to cost many millions more. The construction of a pavement for a sidewalk in front of a lot, is a work of a well defined and comparatively inexpensive character — one that no great injustice or wrong can come from, being allowed to be built in the manner sustained in these decisions — but they can not, with any propriety, cover a work such as is now sought to be sheltered under them. It would be just as sound and correct, under the customary and long established practice of our State, to require of the citizen to open, work upon and keep in repair the common roads of the country — to require that they should construct and keep in repair a railroad through the county in which they reside — or along the front of their lands bordering on such line of railway. The extension of the application of the principle of these decisions, would as well cover and justify the one re *380 •quirement as the other. We do not think this called for, nor warranted by the decisions themselves. We will not stop to criticise the general principle laid down by Judge Green, in another part of the opinion in the case of 1 Swan, except to say that in the broad and general language in which it is expressed, it can not be sustained as correct — for if, in his language, “the public or government has the right to the contributions of the money, and personal services of its citizens, whenever the public exigencies may demand it, in consideration of the protection it affords 'to life, liberty, reputation and property” — and this may be exacted in the way of a duty to be performed, and not in the- form of a tax — then we can easily see, that every exigency and demand of the government might well be met by the imposition of duties or exactions in this form, and taxation be dispensed with entirely — and so the money of the citizen be required and taken from him, on a principle not regulated at all by the Constitution, and even in defiance of its plain and specific provisions. We dismiss these cases with a quotation from the same learned Judge, in the case of Dabney v. Campbell et als., 9 Hum., 682, as indicating the proper use and application of precedents and decisions, and the danger of extending their operation beyond their original purpose, by real or supposed analogies. He says: “ There is nothing more dangerous in the administration of the law, than a blind submission to authorities, merely because they have some analogy to the case for decision. The original case may be decided upon principle, and be *381 sustained upon the soundest reasoning, but the facts of the next ease differing, the -analogy is imperfect;, nevertheless, it is thought to be sufficient to justify the proposed decision; but the third case, though having some analogy to the second, does hot fall at all within the reasoning of the first.” “Such,” he says,, “is the mischievous tendency of the argument now pressed upon us” — and such, we may well say, we deem “the mischievous tendency of the arguments now pressed upon us,” by which the case of the construction of pavements on sidewalks, is sought to be made to cover perhaps the most expensive character of improvement undertaken, in these days of great undertakings, by the great and wealthy cities in the midst of our wonderfully active, .and astonishingly developing country.
We will not further extend this discussion, nor further refer to decided cases, only remarking, that as the cases sustaining an exaction like the one under discussion, all go on a principle which we can. not approve, that of distinguishing between taxation for general purposes of government — and a local assessment, laid equally to carry out the same character of purposes, we cannot yield to them as authority for our conclusions. We feel sure of the correctness of our conclusions in this case, and satisfied, that when we place the right to exact the money of the people, under the broad shadow of the Gonstitution, no one can complain, but that under that protection, both the government that taxes, and the people who pay these taxes, may each rest and find safety and security to all their *382 rights; together with the amplest means on the part of corporations for carrying out on a sound, equitable, and fair principle, all the great powers, and performing all the duties imposed upon them, either by their organic law, or that result from the inherent nature of their organization.
We conclude, by holding, that the assessments in these cases are absolutely void, as being in violation of the Constitution of the State, and of fundamental principles; and direct that the bills be dismissed, and that the complainant pay the costs of this court and the court below.